Thank you, Your Honors. I'm Sam Koistra. I am a counsel for Petitioner Lee Comier. Perhaps this is his last name, Comier, for the Court's reference. Not everyone, understandably, grasps that just based on the spelling. I intend to reserve two minutes of my time for rebuttal this morning. Mr. Comier is serving a sentence that guarantees he will die in prison for non-homicide crimes committed when he was a child. Those facts present grounds for habeas relief based upon the precedent of this Court. Because Lee can make a prima facie showing that he satisfies the authorization criteria, this Court should allow him to proceed to the District Court on that meritorious petition. Before I address the previously unavailable portion of the authorization criteria, I would like to just briefly touch on the remainder of the criteria just so it doesn't get... Counsel, you don't have a lot of time, and I'd appreciate your going directly to the issue. We may certainly do that. So on the question of previous unavailability, the standard for determining whether a new rule was previously unavailable is the one announced. For purposes of SOS applications, it's the one announced in the United States v. Munoz, which adopts a pragmatic real-world standard that is drawn from the PLRA context where we're determining whether a procedural remedy is available or unavailable to a prisoner plaintiff. Lee is able to satisfy that standard. I think his application here is distinct from the unsuccessful application in Munoz in two critical ways. The first is that what Munoz emphasized is that the petitioner there, the applicant there, was objectively aware of the case that was the basis for his new claim, his SOS claim at the time. But your client's state counsel was clearly aware of the Graham issue because it was included in the state petition. You're correct that the state court counsel was aware of Graham and was aware of Montgomery because that was the basis for the claim in the state court. However, the focus under Munoz is under what Lee's knowledge was as a pro-state petitioner in this proceeding. State counsel's knowledge of those cases, of that rule in a separate proceeding, in a separate court cannot be imputed to Lee in this context. Well, Munoz uses the term that someone is prevented as a practical matter from asserting the claim. So I'm not sure, and I think Munoz makes clear that being pro se does not by itself prevent someone from raising an issue. So what specifically prevented him from raising this issue? One factor I would like to point to along those lines is just the basic unique procedural complexity of this case. Munoz draws its rule from the standard, like I said, of PLRA cases. And in the PLRA context, this court and the United States Supreme Court has said that when an administrative remedy is opaque and especially complex, when it's so complex that it might be the language from Ross v. Blake is, would trip up all but the most skillful prisoner, then that simple fact of that complexity renders the remedy unavailable. I think something analogous. He knew enough to have amended his petition in other respects. So the amendment in the petition that he entered was made by the direct order of the district court, and the amendment order made clear that the purpose of the amendment, it wasn't him sua sponte saying I want to raise these new claims, these new ideas. Right, but he understood that that was a possibility, whether it was told to him by the court or he figured it out on his own. We understood that amendment was a possibility because the court told him essentially, you wrote this, you hand wrote this, and we need it to be on the court's official forms. You don't, you identify the respondent as the Department of Corrections, the state of Arizona, and there has to be a personal respondent. So there's an order from the court dismissing the case without prejudice, ordering him, granting him leave to amend, not dismissing the case, but granting him leave to amend the petition to correct those formal deficiencies in his petition. Mr. Poistre, why doesn't that turn the practicality inquiry of Munoz kind of inside out? I mean, what's the authority that we can silo the fact that all of these other things are happening? He understands he can amend. He's got the pending petition. It's three months after Montgomery. Doesn't a practical approach take account of all of those factors in terms of whether these arguments that were being cited, at least in other forums, were available to him? Again, I would say the court, the focus is on unique procedural complexity of this particular case. Well, what about more? I mean, we're looking at this three-month clock with Montgomery, but we had decided before in 2013 that a similarly framed claim may be available or may succeed under the Eighth Amendment. So why shouldn't we look even back to 2013, in which case he's got plenty of time? If that's not available, I don't know what would be. Well, I think this court should look not just at Moore and at Graham, but also at Montgomery, because Montgomery does some additional work for Mr. Cormier beyond what was done in Graham. And usually we're not in the position of typically the habeas petitioner is not looking for us to take the most constrained, on-point Supreme Court decision. And I could imagine down the line you might want to cite Moore as being kind of supporting the claim. So I just don't understand why the work wasn't done in Moore, again, if we're taking a practical view as to whether he could have raised this claim in that petition. Well, again, I think at this stage, I think we have to remember the standard that Mr. Cormier has to meet. It's just a prima facie showing, right? If there's a possible merit based upon that. So is it possible that Lee's claim relies on Montgomery? Montgomery was practically unavailable to him due to the complexity of this case based upon rules interpolated from the PLRA context, which Munoz adopts, right? And so the question there is, again, it's a permissive standard. It's a light burden. This court is not supposed to engage in complex analyses at this stage of the proceeding. And here. Well, complex analyses about the merits, but that unavailability is separate from that, isn't it? Complex analyses, I think I understand, is around the authorization criteria. So, for example, the court can address, it's not supposed to address procedural defenses and so on. But even without that, the standard is permissive, right? So he only has to make a prima facie showing. And Lee has made a prima facie showing that this is unavailable to him due to the unique procedural complexity of this case. And that suffices under that standard. But what else other than the fact that it's just pro se? I mean, even in Munoz they talk about different things. What would you point to to say that three months he was able to decide to file a petition, he was able to amend it? I would. What else? Well, so, again, there's no objective indicia that he was aware of Montgomery, which is relevant to Munoz. I would also point to, if you look at the docket, I believe it's docket entry 48 of the 2016 proceeding in the district court, respondent files a motion asking for clarification about the procedural status of the case. Because even to respondent, this lengthy procedural history where we're dealing with a dozen or so prior, you know, seven or eight prior petitions, it's available to him because of this. He's able to raise it because of his intervening U.S. Supreme Court in that court decisions, making his successive claim an initial one and so on. That is unique to this case. It's not present in Munoz. I would like to reserve the balance of my time. All right. Thank you. Thank you, counsel. Good morning. May it please the court, Amy Thorson from the Arizona Attorney General's Office for Respondent. I'd like to go right to what was raised by petitioner's counsel, which is his position that petitioner was not objectively aware of the Graham claim because of the, from the state PCR proceedings. But it's my understanding that he would have received copies of every filing that was made on his behalf in state court. So I believe then he would have had an objective that he would have been, that his objective. So was Graham cited in that 2016 habeas proceeding? Was Graham cited in those papers? No. Graham was not cited in his original 2016 petition, but it is cited in the notice of PCR relief. Graham and the Montgomery, that it was made retroactive by Montgomery, is in the notice of post-conviction relief and filed in state court on January 23rd, 2017. And he didn't file his amended petition until August of 2017, giving him plenty of time to have been aware of that claim and to raise it in his amended habeas petition. You're saying it was 2017 petition that it was, that it appeared in? The notice of post-conviction relief is filed by counsel on January 23rd, 2017. Was that your question? I'm so sorry. Yes, I'm sorry. Yes. Okay. Okay, 2017, okay. Okay, so applying the rule in Munoz, it was not, petitioner cannot show that real world circumstances prevented him as a practical matter from asserting his claim in his previous petition. We just talked about when he was aware of the factual basis and the timing of the change in law and when it was retroactive. And so it would be no later than being made retroactive by Montgomery, because this court said it was retroactive as of 2013. So by that... Well, Montgomery was issued actually before he filed the 2016 petition. That's correct. Yes, he filed his original petition March 2016, just two months after Montgomery. So it was available even then, but we know that based on the filings in state courts, we know that he knew about it, or we can presume that he knew about it by the time he filed his amended petition. How many years in prison will he actually serve? 95.25 is what his sentence was, but he's already served a considerable amount of that, yes. But what about parole or other factors that might reduce that time? I mean, does the state concede that he'll be no younger than 114 when he's released? I don't know. The only thing I know is that the Arizona Department of Corrections website lists that his earliest release date is 28 now. As I understand Arizona law, in a consecutive sentence situation, the final, whatever is last, you can apply good time credits to, and it comes out to something like 84 years, something like that. I'm honestly not familiar with that. My apologies. What do we make of the, in the 2016 proceedings, the magistrate judge's statement that they deny a stay to Mr. Comier? So can we take that to mean somehow that the ability to amend and raise Montgomery in that petition and to exhaust proceedings was not available to him? Well, we found some authority for the proposition that even if he was, wouldn't have been allowed to amend his petition, that he should have withdrawn his petition in order to, and gone, and then gone back, gone to state court, exhausted his claim, and then refiled his petition in federal court. And that case that we found is Mathis v. Thaler, 616F3-461. Well, even if he'd been denied, he could have sought a COA from this court. That's correct, yes. He has to show that he would have been prevented from doing that. And I don't think he, the record has to show he would have been prevented from doing that, and the record doesn't show that he would have been prevented from, prohibited from filing an amended habeas petition, or that he could have withdrawn his petition and made his claim in his, in his 2016 petition in 2017, or, and then withdrawn his petition and then refiled it. So he cannot show that he would have been prohibited from amending his, he cannot show that he would have been prohibited as a practical matter from raising his claim in his previous petition. Therefore, his, his, he cannot show that his, his, he cannot fulfill the previously unavailable requirement of what he has to show in order to file a successive petition. And also, our position is that he hasn't shown that he is relying on the, the rule in Graham, that he's relying on what would be an extension of the rule in Graham, and that isn't sufficient to make a, the required showing to file, to pursue a successive petition. That is the position we took in our briefing. I don't know if the Court has any questions about that part of it. No?  Okay. The Court has no further questions, and he should, I would argue that he should not be allowed to file his successive petition because he has not met at least two of the requirements, that the claim was previously unavailable, and that he is relying on a new rule of constitutional law. Therefore, his successive petition should be disallowed. Thank you. Thank you, counsel. Mr. Koystra? Am I pronouncing your name correctly? You are pronouncing my name correctly.  I appreciate that. Okay, good. Just very briefly, on the question of the length of Mr. Cormier's sentence, for sentences imposed when Lee's was imposed, he does not have access to parole under Arizona law. There's never been a contention by the state that his sentence gives him any opportunity for life outside of prison. He will die in prison as he is currently sentenced, even if he gets some good time credit on the back end. It will be so long that he will die in prison. I think it's notable we're talking about the state court proceeding. The state court petition, which lays out his claim under Graham and Montgomery, was not filed until several months, I believe it was in 2019, after the habeas petition, the 2016 habeas petition was ended in 2017. It was already denied by the time that the PCR petition was placed. So Lee, even if he was being served documents, did not receive the document that actually laid out the claim until after the habeas proceeding. Are you saying he didn't receive the notice that counsel was referring to that stated the claim in 2017? I cannot say specifically. I do not know off the head if he did receive that notice. If we assume that he did, it did not include the full scope of the argument. But it included notice that that argument was being made. The notice cites Montgomery, but I'm not sure how much could be drawn beyond that. Finally, I think it's notable that the state was aware that he was represented by counsel in the state petition, but made no effort to inform that counsel about what was going on in the habeas petition. It allowed him to proceed pro se. In the PLRA context, that is perhaps analogous to state interference with, out of time, or almost out of time. You can answer the question.  So in the PLRA context, the court will consider whether there's state action that contributed to the unavailability of procedural remedy. In this case, the state was clearly aware that Mr. Comier was represented by counsel in this very complex case in state court. But state court was not served on the pleadings in federal court. State counsel was not notified affirmatively by respondents about this ongoing case. Is that their obligation in your view? I don't know if it's an ethical obligation, but I do know that if we're discussing whether some action by the state. They have no obligation to do something affirmative, and they do nothing. I'm not really sure why that's an action by the state that has any effect. I think the state, Your Honor, was aware of the complexity of this case. There was an inquiry, again, adopted in 348 about what exactly was going on in the case, inquired if the court was going to impose a stay, was aware of what Mr. Comier was contending with as a pro se petitioner. Knew that he had counsel that could have intervened and potentially corrected this, cut this off at the beginning if we wouldn't even be here, and elected not to contact that counsel. Allowed Mr. Comier to proceed in this very complex case with a lawyer that was just off stage but was uninformed about what was going on. I think that has to be considered as part of the flexible Munoz analysis as well. And if there are any other questions, I'm happy to answer them. Otherwise, I would just request that we be allowed to bring this meritorious claim challenging death in prison for a child convicted of non homicide crimes. Thank you very much. Thank you.
judges: GRABER, WARDLAW, JOHNSTONE